(92 South. 274,

No. 24644.

STATE v. SISEMORE et al.

(Jan. 2, 1922. On the Merits, May 15, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Criminal law ⟐1110(8)—Clerk's return to certiorari requiring correction of record held insufficient.**

Where a writ of certiorari commanded the clerk to amend the transcript by transcribing and returning as part of the record that part of the minute entry relative to the time when the appeal was asked for and granted, a return, merely stating the clerk's conclusion that the minutes in the transcript were erroneous, and that in fact the original minute record showed the appeal was taken after sentence, was insufficient.

On the Merits.

**2. Courts ⟐64(4)—Calling of special term unnecessary when case tried within time of court's continuous session.**

As, under the Constitution, district courts in country parishes are required to be in session continuously for ten months of the year, no call for a special term was needed where a case was tried during such session.

**3. Jury ⟐70(6)—Notice to defendant's attorney of drawing of special venire not required.**

No law requires attorneys for accused persons to be notified that a special venire is to be drawn.

**4. Criminal law ⟐589(1) — That defendants strangers and in jail no ground for continuance.**

That the accused were strangers and in jail was no ground for a continuance.

**5. Homicide ⟐175—Evidence that decedent had previously been wounded properly excluded.**

Where deceased was in good health when shot by defendants with a pistol and died a few hours later, and a physician testified that his death was caused by internal hemorrhage

from the wound, evidence that he had previously been wounded was properly excluded; he having recovered from the previous wound.

**6. Homicide ⟐188(7) — Evidence in murder case properly admitted to rebut evidence that the deceased waylaid defendant.**

Where defendants claimed that deceased, who was loading cordwood some distance from a road and had a pistol on his person was there to waylay them, evidence that he left his home a few minutes previous to get a load of cordwood, and that he habitually carried the pistol for defense against other persons by whom he feared an attack, was proper.

**7. Criminal law ⟐683(1)—Deceased's brother properly permitted in rebuttal to give his version of the difficulty to which defendants testified.**

Where defendants testified to a difficulty one of them had with a brother of the decedent, the brother in rebuttal was properly allowed to give his version of the matter.

**8. Criminal law ⟐1144(14)—Jury presumed to have understood instruction.**

In the absence of any request on the part of the jury that the court repeat an instruction, it must be assumed that it was understood by them, notwithstanding the claim that their attention was distracted by the act of state's counsel in remaining standing and protesting while it was being given.

**9. Criminal law ⟐723(3)—Appeal to jury to inflict extreme penalty to stop crime wave not objectionable.**

There was nothing objectionable in the prosecuting attorney's appeal to the jury in his argument to inflict the extreme penalty for homicide as the only way to stop the wave of crime said by him to be sweeping over the land, or in his statements that in England the laws were enforced and there was little crime committed there, and in New York the authorities compromised with crime and crime was rampant.

**10. Criminal law ⟐1156(4)—Motion for new trial addressed to court's discretion, which will not be disturbed except for clear error or abuse of discretion.**

The grant or refusal of a new trial, asked for on the ground that a juror had answered falsely on his voir dire that he had not formed or expressed an opinion, is largely within the trial judge's discretion on conflicting affidavits, and his discretion will not be overridden except for clear error or abuse of discretion.

**11. Criminal law ☞665(6)—Violation of rule by witness within trial court's discretion.**

Where the witnesses have been put under the rule, the fact that one of them violated it not knowing of it was a matter entirely within the trial judge's discretion.

Appeal from Eighth Judicial District Court, Parish of Catahoula; S. R. Holstein, Judge.

Jesse Richardson Sisemore and another were convicted of manslaughter, and they appeal. Affirmed.

Perrin & Perrin, of Jena, D. W. Gibson, of Harrisonburg, and L. B. Duke, of Jonesville, for appellants.

A. V. Coco, Atty. Gen., E. B. Moore, Dist. Atty., of Winnsboro (R. M. Taliaferro, of Harrisonburg, S. L. Richey, of Alexandria, and T. S. Walmsley, of New Orleans, of counsel), for the State.

By the WHOLE COURT as then constituted.

### On Motion to Dismiss.

OVERTON, J. The defendants were indicted and tried for murder; were convicted of manslaughter; and now appeal to this court.

The state has filed a motion to dismiss the appeal on the ground that no appeal was moved for, nor granted, after sentence.

The defendants have filed an answer to this motion averring, if the transcript shows that the appeal was granted prior to sentence, then that it is incorrect in this respect, and have asked, in that event, that it be sent to the clerk of the district court for the parish of Catahoula, and that the clerk be ordered to correct it, so as to make it conform to the truth.

[1] Thereafter defendants moved this court for a writ of certiorari, which was granted. The motion for the writ sets forth that the transcript shows that the appeal was taken before sentence; whereas, the minutes show that it was taken after sentence. The writ was granted. It commanded the clerk to amend the transcript of appeal, if the same should be found to be incorrect, by transcribing and returning to this court, as part of the record, that part of the minute entry made in this case relative to the time when said appeal was asked for and granted, and that he make return forthwith.

The clerk evidently misunderstood the writ, and instead of filing with his return a certified copy of the minute entry, showing when the appeal was granted, filed a return stating his conclusion that the minutes in the transcript are erroneous, in so far as they show that the appeal was taken before sentence; and then the clerk adds:

"In truth and fact, the original minute record of this office shows that said appeal was taken after sentence."

The state filed a motion to strike this return from the record, for the reason that it is "no part of the transcript, inasmuch as no certified copy of what the clerk claims to be the original minutes has been filed in this case."

Then the state avers that the return is incorrect; that the original minute entries up to, and until after, November 26, 1921, were the same as the copy found in the transcript, and that, without any authority whatever, "some one merely struck out the word, 'before,' and inserted the word, 'after,' in the minute entry of March the 26th."

The above motion is supported by the oath of the district attorney, as well as by that of one of the assistant counsel for the state.

The return of the clerk is not sufficient. Besides, it has been suggested that the minutes have been altered without authority. Therefore, in order to gain possession of all the facts necessary to properly dispose of the motion to dismiss, we have concluded to remand the case, without disturbing the judgment that has been rendered, or the sentence that has been imposed, for the limited purposes to be stated in the decree.

.Therefore, without disturbing said judgment or sentence or the appeal taken, it is ordered that this case be remanded to the lower court to enable the state to show contradictorily with the defendants whether said minute entry of March 26, 1921, showing the granting of the appeal herein, has been altered, and, if so, whether without authority; and also to enable the defendants to show in said proceeding what error, if any, exists in said minute entry; and, if error should be found by the court to exist in said entry, to the end that the court may correct the error, so as to make said entry conform to the truth; and it is further ordered that the evidence taken in said proceeding be reduced to writing, and that transcripts of the same be returned to this court; and, in any event, that three certified copies of said entry as it existed at the time the certified copy thereof contained in the transcript was made, and three certified copies of the entry as corrected by the court, if the court should find error in the original entry, and correct the same, together with copies of the ruling of the court in said proceeding, be forwarded to this court, as part of the transcript herein, by the court below; and this, to the end that the motion to dismiss the appeal may be determined.

### On the Merits.

### By the WHOLE COURT

PROVOSTY, C. J. On an indictment for murder the two accused were convicted of manslaughter, and were sentenced to not less than 12 and not more than 15 years at hard labor, and have appealed.

Accused moved for a continuance on the following grounds:

"1. That no special session of this honorable court has been called and advertised according to law at which they may be legally tried.

"That their attorney has not been notified of the calling of a special term of the court; has not been supplied with a list of the jurors drawn to serve at this term and was not aware who composed the jury until a few minutes before the filing of this motion and has not had time, therefore, to investigate the jurors as to their residence and other qualifications.

"2. That they are strangers in this community and have been in jail since their indictment and are, therefore, not in a position to give their attorney the necessary information upon which to make their defense."

[2] No special term needed to be called, and still less advertised, since under the Constitution the district courts in the country parishes are required to be in session continuously for ten months of the year, and this case was tried during such a session.

[3] No law requires attorneys for accused persons to be notified that a special venire is to be drawn.

The list of jurors was duly served on the two accused as required by law.

[4] The fact that the accused were strangers and in jail was no ground for continuance.

As a matter of fact the judge notified the attorney for accused on February 3d, the day on which the grand jury met to investigate the homicide, that, if an indictment was found, a special venire would be called.

[5] The deceased died within a few hours after having been shot with a pistol by accused. A physician who attended him testified that his death was caused by internal hemorrhage from the wound. At the time of the shooting he was in good health, hauling cordwood with a wagon. Accused sought to offer testimony to the effect that the decedent had once before been wounded. The court refused to allow this matter of a previous wounding to be gone into, for the reason that if there had ever been another wound the decedent had recovered from it and was in good health; so that this previous wounding was irrelevant. This ruling was correct.

[6] The decedent was on the roadside, some 60 feet from the road, loading cordwood on his wagon, when, the two accused coming along the road, the homicide occurred. The

deceased had on his person a .45-caliber pistol. The accused sought to show, as part of their defense, that the deceased was there to waylay them. In rebuttal of this, the judge allowed testimony to. the effect that the deceased had left his home just a few minutes previously to get a load of cordwood, and that he habitually carried this pistol for defense against persons other than accused by whom he feared he might be attacked. This evidence was directly in rebuttal; and therefore proper.

[7] The accused testified to a difficulty one of them, ·J. R. Sisemore, had had with a brother of the decedent; and in rebuttal this brother was allowed to give his version of the matter. The evidence, being in rebuttal, was proper.

This same brother was asked: "Why did you stop your car?" To which he answered:

"Because of previous difficulties before. He had cursed me in the presence of my wife on Saturday before because I drove up behind him when the road was in perfect condition and asked him gently to give me room to pass that I might catch a train. He began cursing me when I asked him to let me have the road."

The bill of exception as prepared by accused says that this evidence was given over objection; but the judge in his per curiam says that the objection came after the evidence had been given, and that he instructed the jury to disregard the evidence.

[8] In that part of the bill of exceptions prepared by counsel it is said that, while the judge was giving this instruction, "the state through one of its counsel remained standing and protesting and so distracted the jury's attention that the court's instructions were not understood by them." In saying here that the jury did not understand the instructions of the judge, the counsel are evidently but giving their impression of the matter—an impression which we must assume to be erroneous, because in the absence of any request on the part of the jury to have the court repeat an instruction we must assume that the instruction was understood by them; and, besides, it is hard to believe that any judge would allow counsel to interfere with him while he was instructing the jury, as here stated, that is to. say, so as to prevent his instructions from reaching the jury.

[9] The next bill of. exception has reference to language used by one of the attorneys assisting the prosecution, in his argument before the jury. This language, as quoted in that part of the bill prepared by counsel, is as follows:

"I appeal to you to inflict the extreme penalty in this case, because it is the only way to stop the wave of crime that is sweeping over our land. In England the laws are enforced, and when men commit crime they are tried, convicted, and beheaded. For that reason there is little crime committed in England. In New York state the authorities compromise with crime, and crime is rampant."

The per curiam of the judge is as follows:

"My recollection of the statement made by Mr. Richey, one of the attorneys representing the state, was: 'I appeal to you, gentlemen of the jury, to bring in, a verdict of guilty as charged against the accused parties, who in his opinion had been proven guilty of cold‑blooded murder, and stop this wave of crime going over the United States. That there was very little crime committed in England, because the laws there were strictly enforced.'"

Even accepting counsel's version, we find nothing but argument in this; and therefore nothing objectionable.

The foregoing grounds for reversal were renewed on motion for new trial, with the additional grounds: (1) That one of the jurors on his voir dire had answered ·falsely that he had not formed and expressed an opinion adverse to the prisoners; and (2) that the deputy sheriff while in charge of the jury, had held an animated conversation with one of the jurors separately from the other jurors, and that this was suspicious.

[10] Affidavits and counter affidavits were offered on the point of the qualification of the juror. The judge concluded from them that the juror was qualified; and we cannot say, after reading the affidavits pro and ·

con, that the judge was wrong. The granting or refusing of a new trial is a matter largely within the discretion of the trial judge; and this discretion will not be over-ridden by this court except in a case of clear error, or of abuse of discretion. Marr's Crim. Juris. p. 842.

The conversation between the deputy sheriff and one of the jurors was merely such casual talk as occurs as often as not between the officer in charge and one or more of the jurors in protracted trials; and is so clearly shown to have been absolutely harmless that we deem it unnecessary to notice it further.

[11] The witnesses having been put under the rule, one of them violated the rule—not knowing of it. This was a matter entirely within the discretion of the trial judge. Marr's Crim. Juris. p. 713.

Judgment affirmed.